Fred J. Munder, J.
This is a proceeding under article 78 of the Civil Practice Act to review the determination of the Zoning Board of Appeals which denied petitioner’s application for a variance of the area requirement of the town zoning ordinance as to a plot of land owned by petitioner in a Residence B district' in which the minimum area requirement is one acre.
The petitioner was the developer of a residential area known as Old Chester Hills. Following the rules promulgated by the Planning Board of the Town of Huntington, it filed a preliminary map of its entire development. On the preliminary map, which the board tentatively approved, petitioner was requested by the Town Engineer to set apart the subject parcel for a storm water storage basin, called also a recharge basin. This parcel has an area of 0.73593 acre.
As it progressed with its development, petitioner, under the rules of the Planning Board, submitted and sought final approval of section maps. Before any map may be finally approved it must be certified by an engineer, be accompanied by drainage plans and grading plans and have the approval of the Suffolk County Clerk and the Suffolk County Health Department. These are required by the ‘ ‘ Subdivision Regulations and Site Improvement Specifications of the Town Planning Board ’ ’ before the final map is filed. Then, within 14 days of such filing, a public hearing is held and thereafter the board has 45 days in which to approve the map.
When petitioner submitted the section map covering the portion of the development in which the subject parcel is located, known as “ Map of Section #4 ” the subject parcel was designated on the map as ‘ ‘ storm water storage basin to be dedicated to the Town of Huntington”. The section map, having been prepared and approved in compliance with the regulations, was finally approved by the Planning Board on September 28, 1955.
On excavating the subject parcel to create the recharge basin, it was discovered that the soil conditions were unsuitable for that purpose. Exactly when this determination was made and *445 who made it are not clearly established in the record. However, one objecting neighbor stated at the hearing of the application for a variance, that he learned of the abandonment of the site on September 19, 1955. He fixed the date as the date he purchased the parcel adjoining the subject parcel. He had originally contracted to buy a different lot because he did not want to live next to a sump.
Apparently the Town Engineer, who is charged with such duties, made the decision to abandon the site. It was he who directed the enlargement by petitioner of another recharge basin to accommodate the water run-off from this section.
The petitioner did nothing about the situation, except to pay the taxes assessed against the subject parcel, until 1959, by which time it had sold all, or most, of the development. Being left with a plot which is about one quarter of an acre less than the minimum area it sought the area variance in order to use the plot as a building site.
The respondents now urge that their denial of the variance was justified because (1) the difference between % of an acre and one acre is so substantial as to do violence to the purpose of the ordinance; (2) petitioner did not offer to sell the lot to the abutting owners; (3) any difficulty was self-created; (4) petitioner was guilty of laches and (5) the application should have been made to the Planning Board.
On the evidence before the Board of Appeals I conclude that its conclusions are insubstantial and should be annulled.
In creating the area in question petitioner was complying with a direction of the Town Engineer. Without such compliance there would have been no tentative approval, and certainly no final approval, of any map submitted to the Planning Board. The claim then that the difficulty was self-created must relate to the fact that the petitioner was the developer of the land or that it should have abandoned the section map as soon as it learned that the Town Engineer decided to abandon the site for a recharge basin.
Assuming, as we must from the paucity of proof on this point, that the Town Engineer’s decision was made nine days before the Planning Board’s final approval of the section map, this would have meant a long delay in going through the process again, without considering the additional expense it would entail. In arguing this point respondents ’ counsel, in his brief, says: “ Counsel suggested only that to change the map would take 2 years. Even so, that process could have been commenced at once, and could have been completed several years ago. ’ ’
*446 It is axiomatic that a zoning ordinance must be reasonably applied. To say that a hardship is self-created when its creation is directed by one town officer and twice approved by the Planning Board does not impress me as a reasonable application of the law. True the Planning Board had no knowledge of the engineer’s changed direction but they are both arms of one body and the board’s lack of knowledge ought more logically be attributed to a lack of rapport between co-ordinate branches of government than to a failure on petitioner’s part. Here, in fact, is a unique hardship and for an area variance a showing of practical difficulty alone is sufficient. A change of area can be granted without considering unnecessary hardship and in such case the self-imposed hardship rule does not apply. (Siegel v. Lassiter, 6 A D 2d 879; Matter of Village of Bronxville v. Francis, 1 A D 2d 236, affd. 1 N Y 2d 839.)
The petitioner seeks no change of character of the neighborhood. His application to the Building Inspector shows that the house he seeks to erect is one of similar size and design to others erected in the development. The subject plot is a wedge-shaped parcel with a frontage even greater than one of the abutting parcels but with a shorter rear line. From outward appearance it would be almost impossible to distinguish it from the acre plots. Its most objectionable feature would be its offense to the sensibilities of the neighbors who would be aware of its lesser area.
That petitioner did not offer to sell the lot to the abutting owners does not bar his relief. To do so puts such an owner at the mercy of his neighbors and this no law requires. But in our case, on the hearing, petitioner asked for an offer and none was made. It was said by an objector, and adopted by the Board of Appeals, that petitioner’s pecuniary loss would be minor, the lot representing but 1% of the development and also that it was intended anyway that the area be dedicated to the town. But all these arguments are specious. Confiscation, however slight, is illegal. (N. Y. Const., art. I, § 7.)
The determination of the Zoning Board of Appeals is annulled.
Settle order.